IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19-00102-02-CR-W-DGK |
| ) | |
| ) | |
| JAMES C. CHRISMAN, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This matter is currently before the Court on Defendant James C. Chrisman's *pro se* Motion to Dismiss filed December 7, 2020. Doc. 171. The Government filed Suggestions in Opposition on January 11, 2021. Doc. 177. Defendant did not file a reply, and the time for doing so has passed. L.R. 7.0(c)(3). For the reasons set forth below, it is recommended that Defendant's motion be DENIED.

### I. BACKGROUND

On July 17, 2019, the Grand Jury returned a one-count superseding indictment against Defendant Chrisman. Doc. 37. In Count One, Defendant is charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), (e)(1), and 2. *Id*. Count One alleges the offense occurred on or about June 13, 2017. *Id*. On August 27, 2020, United States Magistrate Judge John Maughmer granted Defendant's request to proceed *pro se*. Docs. 149-50. The motion to dismiss currently pending is Defendant's second attempt to dismiss the indictment.[1]

---

[1] Defendant's original motion to dismiss (Doc. 60) was denied by this Court on May 22, 2020. Doc. 107.

Defendant now seeks to dismiss the superseding indictment due to an alleged violation of his constitutional rights after correctional officers at CoreCivic, where Defendant is currently detained, "unlawfully confiscation [sic]" documents from his cell, which he argues were protected under "Attorney/client Privilege." Doc. 171 at 1. Specifically, Defendant alleges the correctional officers entered his cell, demanded him to exit, and upon returning to his cell, Defendant "noticed [his] legal documents were missing." *Id*. Defendant alleges the documents seized were "legal mail," and thus, were protected under "Attorney/client Privilege." *Id*. Defendant asserts he followed the CoreCivic policy and filed a formal grievance for return of "confidential legal mail seized by correction officers," but was "denied any relief" or an explanation as to why the documents were taken. *Id*. Defendant argues the actions of the correctional officers violate his constitutional rights as it is "**Structural Error**." *Id*. (emphasis in original).

In support of his motion, Defendant filed sworn affidavits from eight eyewitnesses to the search in question. *See* Doc. 172 at 3-10. The affidavits are "fill-in-the-blank" style forms that contain the same factual allegations and provide the witness's name, date, and signature in blanks within the form. *Id.* In each affidavit, the witness generally stated that he observed legal documents being "illegally taken" from James Chrisman. *Id.* Each witness stated that the activities were "unlawful" and "not in compliance with correctional standard operating procedures." *Id.*

The Government filed Suggestions in Opposition on January 11, 2021. Doc. 177. The opposition included an affidavit from the Warden of CoreCivic, Ronald Baker, which details the recent search at CoreCivic for contraband.[2] Doc. 177-1. According to Warden Baker, CoreCivic correctional officers conducted a security exercise in mid-October 2020 to identify detainees who

---

[2] Defendant did not request an evidentiary hearing on his motion. He did not file a Reply to the Government's Suggestions in Opposition, nor did he object to the submission of Warden Baker's affidavit as an exhibit to the Government's pleading. Since both parties have provided affidavits in support of their respective pleadings without objection, the Court will make factual references to the affidavits and to the pleadings of the parties.

were in possession of contraband. *Id.* at 2. "Among other information, CoreCivic had learned that some detainees had received controlled substances in [the] mail, including mail that purported to be legal mail." *Id.* The exercise was conducted by the jail to enforce its own regulations and was not performed at the request of the United States Attorney's Office, the United States Marshals Service, or any law enforcement agency. *Id.*

To conduct the exercise, Warden Baker indicated that "CoreCivic personnel removed detainees from cells identified for search, labeled the belongings therein, and placed the belongings in a specific location to be searched." *Id.* Defendant Chrisman resided in a ten-person dorm room, which housed other detainees, including Leslie Love.[3] *Id.* "Based on information they possessed, CoreCivic personnel identified Leslie Love as a detainee whose property was to be searched. They did not identify [Defendant Chrisman] as a detainee whose property was to be searched." *Id.* On October 22, 2020, the search Mr. Love's area revealed "numerous stacks of documents that were legal in nature and did not belong to him," so the correctional officers collected them and placed them in banker's boxes. *Id.* Mr. Love's area had legal documents for approximately 145 detainees for whom Love was providing legal services, including Defendant. *Id.* According to Warden Baker, jail personnel did not search Defendant Chrisman's area and did not seize his materials except to the extent they were found among the materials in Leslie Love's area. *Id.* at 3.

Warden Baker indicated that CoreCivic hired a law firm to sort through the documents so they could be returned to the corresponding detainees. Doc. 177-1 at 3. "During the week of October 26, 2020, an attorney and paralegal sorted the documents, sealed them in labeled envelopes, and provided them to CoreCivic personnel for return to their original owners." *Id.* The Government contends that documents belonging to Defendant were found in Mr. Love's area and

---

[3] During the pendency of this action, Leslie Love was sentenced by Judge Gary Fenner on September 23, 2020, for two counts of wire fraud, one of which involved him misrepresenting himself as a paralegal to inmates who paid him for legal services. *See* 18-00252-01-CR-W-GAF.

3

were returned to Defendant on November 3, 2020. Doc. 177 at 3. The Warden stated that at no time did CoreCivic provide any of those documents to the United States Attorney's Office, the United States Marshals Service, or any law enforcement agency. Doc. 177-1 at 3.

Based on this series of events, the Government argues this Court should deny Defendant's motion to dismiss because Defendant has failed to show the Government "knowingly intruded on his attorney-client relationship." Doc. 177 at 3. The Government further claims Defendant has not shown the materials seized by CoreCivic during their search were subject to the attorney client privilege. *Id*. In addition, the Government contends Defendant's motion fails because Defendant cannot establish "the prosecution team obtained or benefited from the receipt of privileged information." *Id*. Finally, even if he had shown a constitutional violation, the Government claims Defendant has failed to show that dismissal would be the appropriate remedy. *Id*.

## II. DISCUSSION

Defendant claims the actions taken by CoreCivic's correctional officers violated his constitutional rights under the Fifth, Sixth, and Fourteenth Amendment.[4] Doc. 171. Defendant argues the unlawful confiscation of legal documents constitutes "structural error" which includes alleged interference with inmate legal mail where the prisoner's constitutional right to access to the court is clearly established. *Id.* at 2. This general allegation is insufficient to establish a violation of Defendant's constitutional rights under either the Fifth or Sixth Amendment.[5] Further, Defendant's motion fails to identify any attorney-client relationship and fails to establish that the

---

[4] In support of his motion, Defendant cites 42 U.S.C. § 1983, providing civil remedies for deprivation of rights, and two civil lawsuits, *Green v. Johnson*, 977 F.2d 1383 (10th Cir. 1992), and *Geddes v. Northwest Missouri State University*, 49 F.3d 426 (8th Cir. 1995). A criminal case is the improper jurisdictional and procedural vehicle for a defendant to assert civil claims or lawsuits. *See United States v. Franklin*, 2008 WL 4792168, at *3 (E.D.Pa. Oct. 31, 2008).

[5] Defendant's argument that the correctional officers' actions violated his constitutional rights under the Fourteenth Amendment is misplaced. The Due Process Clause of the Fourteenth Amendment prohibits the *states* from depriving any person of property without due process of law. *See* U.S. Const. amend. XIV § 1. Any potential claims against a state actor may not properly be brought within a federal criminal case with the United States as a party.

4

materials in question involved "legal mail." Nevertheless, the Court will examine Defendant's contention based on the parties' briefing and the applicable law.

### A. The Correctional Officers' Actions Did Not Violate the Fifth Amendment.

The Fifth Amendment provides, "No person shall . . . be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law. . ." U.S. CONST. amend. V. The level of outrageousness needed to prove a due process violation is exceedingly high, and at a minimum, the Government's conduct must shock the conscious of the Court. *United States v. King*, 351 F.3d 859, 867 (8th Cir. 2003); *see also United States v. Bugh*, 701 F.3d 888, 894 (8th Cir. 2012) (finding "[o]utrageous Government conduct requires dismissal of a charge only if it falls within a narrow band of the most intolerable government conduct.") (citation omitted); *United States v. Hunt*, 171 F.3d 1192, 1195 (8th Cir. 1999) (recognizing "Government agents may go a long way . . . without being deemed to have acted so outrageously as to violate due process.").

The Eighth Circuit has not had "occasion to opine on governmental intrusion into an attorney-client relationship in the context of the Due Process Clause of the Fifth Amendment." *United States v. Williams*, 720 F.3d 674, 686 (8th Cir. 2013). However, it noted other circuits use a three-pronged test to determine whether there is a "colorable claim of outrageousness pertaining to alleged governmental intrusion into the attorney-client relationship." *Id.* (quoting *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996)). The three-pronged test requires a defendant to establish (1) the Government's objective awareness of an attorney-client relationship, (2) deliberate intrusion into that relationship, and (3) actual and substantial prejudice. *Voigt*, 89 F.3d at 1067.

"Of course, for there to be an intrusion into an attorney-client relationship, there must first be an attorney-client relationship." *Williams*, 720 F.3d at 686. Defendant has not provided any

5

facts to establish he had an attorney-client relationship with anyone, including his cellmate Leslie Love, or that materials in question fall under an attorney-client privilege. Defendant also failed to allege facts which would prove the items in question constituted "legal mail." Mr. Love is not an attorney and is not licensed to practice law. Since the burden is on the proponent of the attorney-client privilege to demonstrate its applicability, Defendant has failed to establish the existence of an attorney-client relationship.

The proponent must also establish that the particular communications at issue were privileged and that the privilege was not waived. *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003). Defendant has failed to establish the materials in question were subject to an attorney client privilege. Defendant simply avers that his "legal documents" were missing. Doc. 171 at 2. Even assuming *arguendo* the documents seized from Mr. Love's area relating to Defendant were from a time when he was previously represented by counsel, Defendant failed to establish why the privilege was not waived when the documents were provided to Mr. Love. "Voluntary disclosure of attorney client communications expressly waives the privilege." *United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998).

In addition, Defendant has failed to establish the Government deliberately intruded on any attorney-client relationship. *Voigt*, 89 F.3d at 1067. According to Warden Baker, CoreCivic correctional officers collected the documents in Mr. Love's area and a law firm was then hired to review the documents so they could be returned to the respective detainees. Defendant does not plead or set forth any evidence that the documents collected from Mr. Love were ever provided to federal prosecutors or the United States Marshals Service at any time. Warden Baker specifically stated that CoreCivic did not provide any of the materials seized from Mr. Love, including those belonging to Defendant, to the United States Attorney's Office, the United States Marshals Service or any law enforcement agency. Doc. 177-1 at 3. Defendant has not provided any evidence that

6

Case 4:19-cr-00102-DGK   Document 190   Filed 04/02/21   Page 6 of 8

the actions taken by the CoreCivic correctional officers rise to the level of outrageousness needed to establish a due process violation. *King*, 351 F.3d at 867.

Last, Defendant has failed to establish prejudice. Defendant has not shown any prejudice resulting from the temporary confiscation of the documents previously possessed by Mr. Love. According to Warden Baker, Defendant's documents were returned to him less than two weeks after they were obtained from Mr. Love's area. Defendant has not met his burden to establish he suffered actual and substantial prejudice.

For the foregoing reasons, the undersigned recommends a finding that the actions taken by the CoreCivic correctional officers did not violate the Due Process Clause of the Fifth Amendment.

### B. The Correctional Officers Did Not Violate the Sixth Amendment.

The Sixth Amendment provides Defendant with the "right to a speedy and public trial . . . and to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. To establish a Sixth Amendment claim based on violation of the attorney-client privilege, the Eighth Circuit requires a defendant to prove (1) a knowing intrusion into the attorney-client relationship by the Government, and (2) the intrusion demonstrably prejudiced the defendant. *United States v. Tyerman*, 701 F.3d 552, 559 (8th Cir. 2012); *United States v. Singer*, 785 F.2d 228, 234 (8th Cir. 1986.)

As set forth *supra*, Defendant has failed to establish the existence of an attorney-client relationship. *See In re Grand Jury Subpoena*, 341 F.3d at 335. Furthermore, Defendant has failed to provide any facts demonstrating the Government made a *knowing* intrusion into an attorney-client relationship. Last, Defendant does not demonstrate any prejudice, or substantial threat thereof, to warrant dismissal of the indictment in this case. In *United States v. Morrison*, the Supreme Court held absent "demonstrable prejudice, or substantial threat thereof," dismissal of an indictment is "plainly inappropriate." 449 U.S. 361, 365 (1981). Because of such, the undersigned

recommends a finding that the actions taken by the CoreCivic correctional officers did not violate Defendant's Sixth Amendment rights.

### III. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying Defendant's Motion to Dismiss. Doc. 171.

The parties are reminded they have fourteen days in which to file any objections to this Report and Recommendation. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation except on the grounds of plain error or manifest injustice.

DATE: April 2, 2021
*/s/ W. Brian Gaddy*
W. BRIAN GADDY
UNITED STATES MAGISTRATE JUDGE